# In the
# United States Court of Appeals
## for the Second Circuit

————

August Term, 2015

No. 15-3105-cv

ANDREW CARLIN, individually and on behalf of a class,

*Plaintiff-Appellant,*

v.

DAVIDSON FINK LLP,

*Defendant-Appellee.*

————

Argued: April 5, 2016
Decided: March 29, 2017

————

Before: POOLER, PARKER, and LIVINGSTON, *Circuit Judges.*

————

This appeal considers whether a letter to a consumer debtor providing a "Total Amount Due" and stating that the amount may include estimated fees, costs, additional payments, or escrow disbursements that are not yet due is sufficient to state the "amount of the debt" as required by the Fair Debt Collection Practices Act. 15 U.S.C. § 1692g. We hold that, in the circumstances here, it is not. As a threshold matter, we also clarify that mortgage foreclosure complaints are not "initial communications" within the meaning of

the Fair Debt Collection Practices Act.  Because Carlin has stated facts that, if true, give rise to liability under the Fair Debt Collection Practices Act, we vacate the judgment of the district court and remand for further proceedings.

————

DANIEL A. EDELMAN (Tiffany N. Hardy, *on the brief*), Edelman, Combs, Latturner & Goodwin, LLC, Chicago, IL, *for Plaintiff-Appellant*.

ANDREW M. BURNS, Davidson Fink LLP, Rochester, NY, Matthew J. Bizzaro, L'Abbate, Balkan, Colavita & Contini, LLP, Garden City, NY, *on the brief*, *for Defendant-Appellee*.

————

BARRINGTON D. PARKER, *Circuit Judge*

————

Plaintiff-Appellant Andrew Carlin, individually and on behalf of others similarly situated, alleges that Defendant-Appellee Davidson Fink LLP violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA"), when it failed to provide the "amount of the debt" within five days after an initial communication with a consumer in connection with the collection of a debt, as required by § 1692g.  The complaint alleges that Davidson Fink made three attempts to collect on a debt and that each time, it failed to provide adequate notice to Carlin of the amount of the debt.

Carlin urges us to hold that Davidson Fink's first communication, a mortgage foreclosure complaint (the "Foreclosure Complaint"), was an initial communication with a consumer in connection with the collection of a debt, and that Davidson Fink was

2

therefore required to provide the "amount of the debt" within five days of filing the Foreclosure Complaint. But we decline to so hold because the plain language of the statute excludes from § 1692g pleadings in a civil action. Instead, we conclude that Davidson Fink's follow-up letter, an unambiguous attempt to collect on a debt, triggered the disclosure requirements of § 1692g, and that Carlin has adequately alleged that this second communication by Davidson Fink did not satisfy those requirements. We therefore vacate the order and judgment of the district court and remand for further proceedings consistent with this opinion.

## BACKGROUND

Because this appeal comes before us on a motion to dismiss, we accept as true all plausible allegations in the complaint.

Davidson Fink is a law firm whose practice areas include debt collection and foreclosure. Davidson Fink provides a "wide-range of debt collection services," and offers "immediate and inexpensive options to recover unpaid funds with a comprehensive collection process." App. at 3. As part of its practice, Davidson Fink regularly collects consumer debts, including residential mortgage debts. There is no dispute that Davidson Fink is a debt collector within the meaning of the FDCPA.

On June 24, 2013, Davidson Fink filed the Foreclosure Complaint against Carlin, seeking to collect on a 2005 mortgage allegedly defaulted on by Carlin. The summons indicated that "[t]he relief sought in the within action is a final judgment directing the sale of the premises described above to satisfy the debt secured by the Mortgage described above." App. at 12. The Foreclosure Complaint stated that "this action may be deemed to be an attempt to collect a debt." App. at 17. The Foreclosure Complaint also included a paragraph requesting:

That if the proceeds of said sale of the mortgage premises aforesaid be insufficient to pay the amount found due to the plaintiff with interest and costs, the officer making the sale be required to specify the amount of such deficiency in his report of sale so that plaintiff may thereafter be able to make application to this Court, pursuant to Section 1371 of the Real Property Actions and Proceedings Law, for a judgment against the defendant(s) referred to in paragraph FOURTH of this Complaint for any deficiency which may remain after applying all of such moneys so applicable thereto, except that this shall not apply to any defendant who has been discharged in bankruptcy from the subject debt[.]

App. at 18. Section 1371 of the New York Real Property Actions and Proceedings Law provides that "[s]imultaneously with the making of a motion for an order confirming the sale, . . . the party to whom such residue shall be owing may make a motion in the action for leave to enter a deficiency judgment . . . ." N.Y. REAL PROP. ACTS. LAW § 1371(2) (2016).

Davidson Fink attached to the Foreclosure Complaint a "Notice Required by the Fair Debt Collection Practices Act," which stated that "the amount of the debt is stated in the complaint hereto attached," and also that "the debt . . . will be assumed to be valid . . . unless the debtor, within thirty (30) days after receipt of this notice, disputes the validity of the debt." App. at 21. Contrary to the assurance made in the attached notice, the Foreclosure Complaint did not state the amount of the debt.

Apparently prompted by the Foreclosure Complaint's warnings, Carlin sent Davidson Fink a letter on July 12, 2013 (the "July Letter"), disputing the validity of the debt and requesting a verification of the dollar amount of the purported debt. Davidson Fink obliged, and on August 9, 2013, sent a letter (the "August Letter") to Carlin containing, among other things, a Payoff Statement. The Payoff Statement was dated July 31, 2013, and indicated that it was valid through August 14, 2013. The Payoff Statement included a "Total Amount Due" of $205,261.79. Below the amount due, however, the statement added, in small print:

> To provide you with the convenience of an extended "Statement Void After" date, the Total Amount Due may include estimated fees, costs, additional payments and/or escrow disbursements that will become due prior to the "Statement Void After" date, but which are not yet due as of the date this Payoff Statement is issued. You will receive a refund if you pay the Total Amount Due and those anticipated fees, expenses, or payments have not been incurred.

App. at 55. The Payoff Statement did not indicate what those estimated fees, costs, or additional payments were or how they were calculated.

Carlin brought this action alleging that Davidson Fink violated the FDCPA, which provides:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the

> debt, send the consumer a written notice containing—
>
> (1) the amount of the debt . . . .

15 U.S.C. § 1692g(a). Carlin alleges that the filing of the Foreclosure Complaint was an "initial communication . . . in connection with the collection of any debt," and because Davidson Fink failed to specify the amount of the debt within five days of filing the complaint, it is liable for damages under the FDCPA. *See id.* § 1692k. Alternatively, Carlin alleges that Davidson Fink was required to respond with the amount of the debt within five days of receiving the July Letter. Finally, Carlin alleges that if neither the Foreclosure Complaint nor the July Letter was an initial communication, then the August Letter was an initial communication made in connection with the collection of a debt and the Payoff Statement did not satisfy § 1692g(a) because the amount due included unaccrued and unspecified fees and costs.

Davidson Fink moved to dismiss for failure to state a claim. In September 2014, the district court (Seybert, *J.*) denied the motion, saying that Carlin had plausibly alleged that Davidson Fink was acting as a debt collector, that it engaged in an initial communication with Carlin, and that it failed to comply with § 1692g(a). Davidson Fink moved for reconsideration, and in September 2015, the district court granted the motion and dismissed the complaint, holding that because the Foreclosure Complaint was not an effort to collect on a debt within the meaning of § 1692g(a), the complaint failed to plausibly state a claim. Carlin appeals.

## DISCUSSION

We review a district court's grant of a defendant's motion to dismiss *de novo*. *Hart v. FCI Lender Servs., Inc.*, 797 F.3d 219, 223 (2d Cir. 2015). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). We must "accept as true all of the allegations contained in a complaint," though "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Though we are confined "to the allegations contained within the four corners of [the] complaint," *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 71 (2d Cir. 1998), we may also consider any "documents attached to the complaint as an exhibit or incorporated in it by reference," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

In assessing Carlin's claim, § 1692g(a) calls upon us to make three determinations: (1) whether any of the communications between the parties were "initial communications" within the meaning of § 1692g, (2) whether any of the communications between the parties were "in connection with the collection of any debt," and (3) whether Davidson Fink provided the amount of the debt within five days of such a communication. We agree with Davidson Fink that neither the Foreclosure Complaint nor the July Letter are initial communications giving rise to the requirements of § 1692g(a). We hold, however, that the August Letter was an initial communication in connection with the collection of a debt, and that the Payoff Statement attached to the August Letter did not adequately state the amount of the debt.

### A.    Initial Communication

The FDCPA does not offer a definition of "initial communication." In *Goldman v. Cohen*, we held that a "debt collector's initiation of a lawsuit in state court seeking recovery of unpaid consumer debts is an 'initial communication' within the meaning of the FDCPA." 445 F.3d 152, 155 (2d Cir. 2006). After *Goldman*, however, Congress amended the FDCPA in 2006 to clarify that "[a] communication in the form of a formal pleading in a civil

action shall not be treated as an initial communication for purposes of subsection (a) of this section." 15 U.S.C. § 1692g(d) (added by the Financial Services Regulatory Relief Act of 2006, Pub. L. No. 109-351, § 802(a), 120 Stat. 1966, 2006–07 (2006)). We have recognized that this amendment supersedes our determination in *Goldman*. *See Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 136 (2d Cir. 2010).

Despite the plain language of the statute, Carlin insists that the Foreclosure Complaint is an initial communication. Carlin argues that our holding in *Hart*, 797 F.3d at 224, makes clear that a § 1692g notice is an initial communication. Here, Davidson Fink attached such a notice to the Foreclosure Complaint, although it was not required to do so, and Carlin argues that because the notice was not part of the "formal pleading," it does not fall within the exception for formal civil pleadings provided in the statute.

Carlin's argument finds no refuge in the text of the statute. Section 1692g(d) states that a "communication in the form of a formal pleading in a civil action" is not an initial communication. We have recognized that "courts should avoid statutory interpretations that render provisions superfluous." *State St. Bank & Tr. Co. v. Salovaara*, 326 F.3d 130, 139 (2d Cir. 2003). Were we to adopt Carlin's reading that the exclusion applies only to the formal documents that make up a standard pleading, we would be ignoring the plain language instructing that all communications in the *form* of a civil pleading are excluded from the definition of initial communication. Congress could have drawn the exclusion more narrowly, but it did not. Instead, it adopted a broad exclusion that, on its face, applies to any communication forming any part of a pleading. Such an exclusion naturally extends to exhibits attached to a complaint, and accordingly includes the § 1692g notice attached to the Foreclosure Complaint. Thus, we hold that even documents that

are superfluously attached to a formal pleading are not initial communications within the meaning of the FDCPA.[1]

Carlin protests that the § 1692g notice is misleading because it erroneously instructed him that he had 30 days to dispute the debt, which, according to the position now taken by Davidson Fink, was false. But Carlin has not alleged in his complaint that the notice was misleading, only that it failed to state the amount of the debt. Should Carlin wish to amend his complaint to state such a claim, that issue must be decided by the district court in the first instance, and we express no view on the merits of such a claim.

Carlin next alleges that the July Letter, sent from him to Davidson Fink in response to the Foreclosure Complaint, is an initial communication. Numerous district courts have rejected the notion that a communication initiated by a debtor to a debt collector may qualify as an initial communication. *See, e.g.*, *Derisme v. Hunt Leibert Jacobson P.C.*, 880 F. Supp. 2d 339, 367–68 (D. Conn. 2012); *Lane v. Fein, Such & Crane, LLP*, 767 F. Supp. 2d 382, 387 (E.D.N.Y. 2011); *Gorham-Dimaggio v. Countrywide Home Loans, Inc.*, No. 1:05-cv-0583, 2005 WL 2098068, at *2 (N.D.N.Y. Aug. 30, 2005). Like those courts, we conclude that, read in the context of the entire statute, initial communications do not include communications initiated by the debtor.

"When construing a statute, we begin with its language and proceed under the assumption that the statutory language, unless otherwise defined, carries its plain meaning . . . ." *Chen v. Major League Baseball Props., Inc.*, 798 F.3d 72, 76 (2d Cir. 2015). The statute specifies that the communication must be "with" a consumer. We

---

[1] Because we conclude that the erroneously attached notice was not an initial communication, we need not confront the parties' extensive arguments regarding whether the initiation of a foreclosure action is done "in connection with the collection of any debt." Nor do we need to consider the district court's interpretation of the Eleventh Circuit's ruling in *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211 (11th Cir. 2012), as that case offers little guidance on the issues we confront here.

cannot discern from this alone whether the statute should be read to exclude communications initiated by the consumer. Where statutory language is ambiguous, we may consider legislative history, but in doing so, we must "construct an interpretation that comports with [the statute's] primary purpose and does not lead to anomalous or unreasonable results." *Puello v. Bureau of Citizenship & Immigration Servs.*, 511 F.3d 324, 327 (2d Cir. 2007) (alteration in original) (internal quotation marks omitted) (quoting *Connecticut ex rel. Blumenthal v. United States Dep't of the Interior*, 228 F.3d 82, 89 (2d Cir. 2000)); *see also Romea v. Heiberger & Assocs.*, 163 F.3d 111, 118 (2d Cir. 1998) (noting that the court should avoid interpreting the FDCPA to "contravene[] the purpose of the statute").

The FDCPA states that its purpose is to "eliminate abusive debt collection practices *by debt collectors*." 15 U.S.C. § 1692(e) (emphasis added). We have similarly recognized that the "FDCPA was passed to protect consumers from deceptive or harassing actions taken *by debt collectors*." *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002) (emphasis added). And the legislative history makes clear that the debt collector's obligation to provide the amount of the debt arises only "[a]fter initially contacting a consumer." S. Rep. No. 95-382, at 4 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1699. The legislative history and stated purpose of the statute thus indicate that the statute's primary purpose, particularly where § 1692g is implicated, is to regulate communications from the debt collector to the debtor. Thus, imposing liability under § 1692g when a debtor initiates the communication would run counter to the statute's primary purpose and would impose liability in circumstances not contemplated by either the statute or the legislature. Accordingly, the July Letter is not an initial communication under the FDCPA.

We have little difficulty concluding, however, that the August Letter was an initial communication. Davidson Fink argues that the protections of the FDCPA are not implicated where the debtor is protected by the procedures of the court system. Davidson Fink's

argument fails because the August Letter was not sent in the context of a litigation, nor was it even sent to Carlin's attorney. The cases cited by Davidson Fink are inapposite—those cases, which concern only misrepresentations under § 1692e, all involve representations made to an attorney representing the debtor, usually in the context of a formal proceeding. *See, e.g.*, *Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x 89, 92 (2d Cir. 2012) (alleged misstatements made in state foreclosure action); *Simmons v. Roundup Funding, LLC*, 622 F.3d 93, 95 (2d Cir. 2010) (alleged misstatements made in bankruptcy filing); *Kropelnicki*, 290 F.3d at 123 (alleged misstatement made over the phone to attorney during settlement discussions). Here, by contrast, the August Letter was not sent in connection with the foreclosure proceeding, and in fact makes no mention of the proceeding. Furthermore, the letter was not sent to Carlin's attorney, who had already appeared on behalf of Carlin in the foreclosure proceeding, but to Carlin himself. Davidson Fink is thus incorrect that Carlin was amply protected by the procedures of the court system.

Nor can we say that the August Letter was merely a response to an unsolicited request for information. The August Letter was sent in response to the July Letter, which was only sent in the first place because Carlin was under the mistaken impression that he was required to dispute the debt within thirty days. In light of such circumstances, there is little dispute that the August Letter was an initial communication within the meaning of the FDCPA.

**B.    In Connection With the Collection of Any Debt**

Having determined that only the August Letter is an initial communication, we must assess whether the letter was sent "in connection with the collection of any debt." 15 U.S.C. § 1692g(a). In addressing this question at the motion to dismiss stage, our role is to determine merely whether, when viewed objectively, the plaintiff "has plausibly alleged that a consumer receiving the communication

11

could reasonably interpret it as being sent 'in connection with the collection of [a] debt,' rather than inquiring into the sender's subjective purpose." *Hart*, 797 F.3d at 225 (alteration in original). In *Hart*, we determined that the letter in question was unambiguously sent in connection with the collection of a debt because: (1) the letter directed the recipient to mail payments to a specified address, (2) the letter referred to the FDCPA by name, (3) the letter informed the recipient that he had to dispute the debt's validity within thirty days, and (4) most importantly, the letter "emphatically announce[d] itself as an attempt at debt collection: 'THIS IS AN ATTEMPT TO COLLECT UPON A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.'" *Id.* at 226. We had "no difficulty in concluding" that the communication in question was an attempt to collect on a debt within the meaning of the FDCPA. *Id.*

Here, too, the August Letter is unambiguous. The Payoff Statement provides addresses to which Carlin was instructed to mail or wire his payments, the cover letter mentions the FDCPA by name, and, most notably, the letter states: " PLEASE BE ADVISED THAT DAVIDSON FINK LLP IS A LAW FIRM ACTING AS A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED FROM YOU WILL BE USED FOR THAT PURPOSE." App. at 54. These factors, dispositive in *Hart*, are similarly instructive here and demonstrate that Carlin has adequately pleaded that the August Letter was sent in connection with the collection of a debt.

### C.    Amount of the Debt

The remaining inquiry is whether Davidson Fink adequately stated the amount of the debt in the August Letter, as required by § 1692g. We conclude that it did not.

The Payoff Statement included a "Total Amount Due," but that amount may have included unspecified "fees, costs, additional payments, and/or escrow disbursements" that were not yet due at

the time the statement was issued. The Payoff Statement indicated that any such fees would accrue by August 14, 2013 (the date on which the Payoff Statement became void), and that if payment of the "Total Amount Due" was made prior to August 14, Carlin would receive a refund in the amount of the unaccrued fees.

When determining whether a debt collector has violated § 1692g's notice requirements, we consider how the "least sophisticated consumer" would interpret the notice. *See Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996) (citing *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993)). We ask whether "the notice fails to convey the required information 'clearly and effectively and thereby makes the least sophisticated consumer uncertain' as to the meaning of the message." *DeSantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001) (quoting *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 85 (2d Cir. 1998)). Thus, even if a debt collector accurately conveys the required information, a consumer may state a claim if she successfully alleges that the least sophisticated consumer would inaccurately interpret the message.

It is unclear whether Davidson Fink's notice accurately conveys the required information. The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction . . . , whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). The Seventh Circuit has expressed doubt that "debt" includes unaccrued court costs or attorney fees. *See Veach v. Sheeks*, 316 F.3d 690, 693 (7th Cir. 2003). But the Payoff Statement does not specify what the "estimated fees, costs, [and] additional payments" are, and thus we cannot say whether those amounts are properly part of the amount of the debt.[2] If Davidson Fink improperly included fees and costs

---

[2] The only additional fee beyond principal and interest referenced in the underlying note is a 2% "Late Charge for Overdue Payments." **[JA155]** The Payoff Statement does not indicate whether the late charge is part of the "fees, costs, [and] additional payments" included in the Total Amount Due.

that it was not entitled to under the note (absent a judgment), the Payoff Statement would plainly be insufficient under § 1692g.

The least sophisticated consumer standard we use to interpret the legal effect of FDCPA notices supports this conclusion. Absent fuller disclosure, an unsophisticated consumer may not understand how these fees are calculated, whether they may be disputed, or what provision of the note gives rise to them. Because the statement gives no indication as to what the unaccrued fees are or how they are calculated, she cannot deduce that information from the statement.

We do not hold that a debt collector may never satisfy its obligations under § 1692g by providing a payoff statement that provides an amount due, including expected fees and costs. But a statement is incomplete where, as here, it omits information allowing the least sophisticated consumer to determine the minimum amount she owes at the time of the notice, what she will need to pay to resolve the debt at any given moment in the future, and an explanation of any fees and interest that will cause the balance to increase.

We are not ignorant of the safe-harbor statement we formulated in *Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72 (2d Cir. 2016). There, we held:

> [A] debt collector will not be subject to liability under Section 1692e for failing to disclose that the consumer's balance may increase due to interest and fees if the collection notice either accurately informs the consumer that the amount of the debt stated in the letter will increase over time, or clearly states that the holder of the debt will accept payment of the amount set forth in full

> satisfaction of the debt if payment is made by a specified date.

817 F.3d at 77. However, the Payoff Statement only expresses that the Total Amount Due *may* include *estimated* fees and costs. There is no clarity as to whether new fees and costs are accruing or as to the basis for those fees and costs.[3]

Notices such as the Payoff Statement here may very well be commonplace in the debt collection industry. But the FDCPA does not insulate a debt collector from liability merely because others in the industry engage in the same practice. It is no great chore for Davidson Fink and other debt collectors to revise their standard payoff statements to clarify the actual amount due, the basis of the fees, or simply some information that would allow the least sophisticated consumer to deduce the amount she actually owes.

## CONCLUSION

Because Carlin has adequately alleged that the August Letter is an initial communication sent by a debt collector in connection with the collection of a debt and that it does not clearly state the amount of the debt, we vacate the order and judgment of the district court and remand for proceedings consistent with this opinion.

---

[3] As we explained in *Avila*, though not required by the text of the statute, a notice would also satisfy § 1692g if it used language such as : "As of today, [date], you owe $___. This amount consists of a principal of $___, accrued interest of $___, and fees of $___. This balance will continue to accrue interest after [date] at a rate of $___per [date/week/month/year]." 817 F.3d at 77 n. 2 (citing *Jones v. Midland Funding, LLC.*, 755 F.Supp.2d 393, 397 n. 7).