18-3671 (L)
*MV Realty PBC, LLC v. Innovatus Capital*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 30th day of December, two thousand nineteen.

PRESENT: AMALYA L. KEARSE,
              CHRISTOPHER F. DRONEY,
              RICHARD J. SULLIVAN,
                  *Circuit Judges.*

-----------------------------------------------------------------

MV REALTY PBC, LLC,

       *Plaintiff-Counter-Defendant-Appellee,*

    v.                             No. 18-3671

INNOVATUS CAPITAL PARTNERS, LLC,

       *Defendant-Counter-Claimant-Appellant.*

-----------------------------------------------------------------

INNOVATUS CAPITAL PARTNERS, LLC,

       *Plaintiff-Counter-Defendant-Appellant*,

    v.                                           No. 18-3676

DARYL CLARK, RITZ ADVISORS, LLC, ANTONY MITCHELL, AMANDA ZACHMAN, JONATHAN NEUMAN, GREG WILLIAMS,

       *Defendants-Counter-Claimants-Appellees*.

-----------------------------------------------------------------

| | |
|---|---|
| FOR APPELLANT: | LEO G. KAILAS (Edward P. Grosz, *on the brief*), Reitler Kailas & Rosenblatt, LLC, New York, NY. |
| FOR APPELLEES: | JASON C. RAOFIELD (Nishchay H. Maskay & Ravi Doshi, *on the brief*), Covington & Burling LLP, Washington, DC. |

Appeals from judgments of the United States District Court for the Southern District of New York (Louis L. Stanton, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments of the district court are **REVERSED** and **REMANDED**.

Appellant Innovatus Capital Partners, LLC ("Innovatus") appeals from a decision of the United States District Court for the Southern District of New York

2

(Stanton, *J.*), granting judgment on the pleadings and dismissing Innovatus's claims in two actions involving the same business dispute. In a single opinion, the district court concluded that the parties' non-disclosure agreement was based on a mutual mistake, and did not prevent Appellees Daryl Clark, Ritz Advisors, LLC, Antony Mitchell, Amanda Zachman, Jonathan Neuman, Greg Williams, and MV Realty from entering certain "right to list agreements." We disagree.

I.

In August 2017, Innovatus entered into a Non-Disclosure Agreement ("2017 NDA") with Neuman and Mitchell – officers for MV Realty, a real estate brokerage firm – and Ritz Advisors for the purpose of jointly pursuing a business opportunity "related to the purchase, and subsequent securitization, of real estate forward contracts." Joint Appendix ("App'x") at 52. The agreement both prevented the disclosure of confidential information (the "Non-Disclosure Provision"), and prevented Neuman, Mitchell, and Ritz Advisors from working with others "in connection with the Business Opportunity . . . unless such approval is specifically granted in written form by [Innovatus] on a case-by-case basis" (the "Non-Circumvention Provision"). App'x at 53.

The 2017 NDA defined "Business Opportunity" as "a possible business

3

opportunity related to the purchase, and subsequent securitization, of real estate forward contracts." App'x at 52. In broad strokes, the business opportunity was expected to proceed as follows: First, Appellees would enter into "forward contracts" with homeowners, pursuant to which the homeowner would receive an upfront sum, and in return, grant the broker the right of first refusal to list the house for sale should the homeowner later sell. At step two, those agreements – referred to as "right to list agreements" – would then be bundled into securities to be sold by Innovatus to investors. In November 2017, MV Realty began entering into right to list agreements with homeowners; around that time, the parties learned that a patent from 2008 (the "Harrington Patent") disclosed a similar business scheme.[1]

Nevertheless, that same month, Innovatus and MV Realty executed NDAs with Zachman and Williams, two of MV Realty's real estate agents.[2] Then, in January 2018, Innovatus, Mitchell, Neuman, and Ritz also signed an NDA with Daryl Clark, who was expected to serve as the CFO for the joint venture. These

---

[1] We note, as Innovatus does, that it is not clear that the Harrington Patent is enforceable or that this business model is even patentable.

[2] While the Zachman and Williams NDAs are dated October 20, 2017, the parties agree that these NDAs were not executed until November 14, 2017.

NDAs defined the Business Opportunity more broadly than the 2017 NDA to include activities "related to the real estate brokerage business." App'x at 80, 85. In the months that followed, the parties took substantial steps to build the joint venture, but in April 2018, Neuman and Mitchell allegedly told representatives from Innovatus that MV Realty and the other Appellees intended to pursue the Business Opportunity without Innovatus.

In May 2018, Innovatus brought this action against Appellees (not including MV Realty) for breach of contract and anticipatory repudiation. MV Realty countered with a suit of its own, seeking a declaratory judgment permitting it to enter into right to list agreements with homeowners. The district court granted judgment on the pleadings in both actions in favor of Appellees and dismissed Innovatus's claims, finding that the NDA was based on a mutual mistake and voiding the Non-Circumvention Provision to the extent that it prevented Appellees from entering right to list transactions. This appeal followed.

## II.

"We review *de novo* a district court's decision to grant a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c)." *Altman v. J.C. Christensen & Assocs., Inc.*, 786 F.3d 191, 193 (2d Cir. 2015). Moreover,

5

"[w]e employ the same standard applicable to dismissals pursuant to [Federal Rule of Civil Procedure 12(b)(6) . . . in that] we accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor." *Id.* (internal citations, quotation marks, and alterations omitted). We assume the parties' familiarity with the underlying facts and prior record of proceedings.

III.

On appeal, Appellant primarily argues that the district court erred in entering judgment on the pleadings in favor of Appellees on the basis of mutual mistake. We agree. "A mutual mistake occurs when both . . . parties to a bilateral transaction share the same erroneous belief and their acts do not in fact accomplish their mutual intent." *Healy v. Rich Prod. Corp.*, 981 F.2d 68, 73 (2d Cir. 1992) (internal quotation marks and citation omitted). Importantly, "the mistake must be so material that . . . it goes to the foundation of the agreement." *Simkin v. Blank*, 19 N.Y.3d 46, 52 (2012) (internal quotation marks omitted). Indeed, "to overcome the heavy presumption that a deliberately prepared and executed written instrument manifested the true intention of the parties, evidence of a very high order is required." *George Backer Mgmt. Corp. v. Acme Quilting Co.*, 46 N.Y.2d 211, 219 (1978). Generally, a mutual mistake should be raised as an affirmative defense,

6

which is waived if not raised in the answer.  *See*  Fed. R. Civ. P. 8(c); *see also, e.g.*, *Keane v. Zitomer Pharmacy, Inc.*, No. 06-cv-5981 (RJS) (KNF), 2010 WL 624285, at \*5 (S.D.N.Y. Feb. 23, 2010); *In re Indesco Int'l, Inc.*, 451 B.R. 274, 301 n.116 (Bankr. S.D.N.Y. 2011).

Here, none of the parties in either action asserted mutual mistake as an affirmative defense in their answers or in their briefs on Appellees' motions to dismiss and for judgment on the pleadings.  Nevertheless, the district court concluded that the parties' written agreement was based on a mutual mistake because, at the time of signing, both parties believed that the Business Opportunity was not public, only to later discover that the "Harrington Patent" identified a similar business model nearly a decade earlier.  The district court therefore determined that this mutual mistake of fact voided "any reading of the NDAs that would prevent [MV Realty's] independent pursuit of" right to list agreements. *Innovatus Capital Partners, LLC v. Neuman*, No. 18-cv-4252 (LLS), 2018 WL 6332901, at \*1 (S.D.N.Y. Nov. 7, 2018).

At the pleading stage, we cannot agree that the presumed originality of the business model was so material to the agreement that it voided the Non-

7

Circumvention Provision of the NDAs as to right to list agreements.[3]  To be sure,

there appears to be no dispute that, at the time the parties entered into the 2017

NDA, they were unaware of the Harrington Patent and believed the Business

Opportunity to be the first of its kind.  That turned out to be incorrect – in the sense

that the general idea for securitization of right to list agreements was not original

to the parties.  But the 2017 NDA at least arguably contemplates a joint venture

that consists of *more* than just the identification of the business model, extending

as well to the development and execution of that model.  This was borne out by

the fact that the parties continued with the joint venture even *after* they learned

about the Harrington Patent, going so far as to sign at least one new NDA with

Clark that largely resembled the 2017 NDA.  Therefore, Innovatus's allegations,

accepted as true, create at least a plausible inference that the originality (and

confidentiality) of the business model was not central to the NDAs.  *See Asset*

---

[3] We also find that the doctrine of mutual mistake is plainly inapplicable to at least one of the NDAs – the Clark NDA – because it was executed in January 2018, two months after the parties discovered the Harrington Patent. *See Simkin*, 19 N.Y.3d at 52 ("[T]he mutual mistake must exist at the time the contract [was] entered into[.]" (internal quotation marks and citation omitted)).  The parties have not specified precisely when in November 2017 they discovered the patent, so it is unclear if the Zachman and Williams NDAs, which were executed on November 14, 2017, were also executed after that discovery.  In any event, those NDAs are also not voidable for mutual mistake for the reasons that follow.

*Mgmt. & Capital Co. v. Nugent*, 925 N.Y.S.2d 653, 654 (2d Dp't 2011) ("[P]roof of mutual mistake must be of the highest order, and must show clearly and beyond doubt that there has been a [mutual] mistake. . . ." (internal quotation marks and citations omitted)).

IV.

Appellees argue that, even absent the mutual mistake apparently relied upon by the district court, dismissal was still appropriate because the 2017 NDA contemplated a two-step Business Opportunity – first, entering right to list agreements, and second, securitizing those agreements – and Innovatus does not allege that Appellees have attempted the second step. But this argument presupposes that the agreements are unambiguous – a threshold inquiry the district court did not explicitly address. Under New York contract law, which the parties agree governs this dispute, "the question of whether a written contract is ambiguous is a question of law for the court." *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 396 (2d Cir. 2009). In making this determination, a court looks only to the four corners of the contract; extrinsic evidence may be considered only once the court has concluded that the contract is ambiguous. *See id.* at 397. Moreover, "the contract should be construed so as to give full meaning and effect to all of its

9

provisions."  *Olin Corp. v. Am. Home Assurance Co.*, 704 F.3d 89, 99 (2d Cir. 2012) (internal quotation marks omitted).

At this stage of the proceedings, we cannot agree with the district court that, on the face of the NDAs, the "'Business Opportunity' is a term of art expressing *the idea* of combining both the [right to list agreements] and securitization endeavors."  *Innovatus Capital Partners*, 2018 WL 6332901, at *1 (emphasis added). The complaint and documents attached to it suggest that the agreements encompassed the creation and *development* of the joint venture, not merely the idea of it.   Indeed, the Non-Circumvention Provision, which appears in a substantially identical form in each NDA, broadly states that the parties "agree not to undertake any transaction or a *series of transactions* of any kind *in connection with* the Business Opportunity without the express prior written agreement of" Innovatus.  App'x at 53 (emphasis added).  This expansive language supports the inference that the NDAs were not limited to the "idea" of purchasing right to list agreements and then securitizing them.  *See Olin Corp.*, 704 F.3d at 99 ("Any interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless is not preferred and will be avoided if possible."  (internal quotation marks, citation, and alterations omitted)).  Therefore, we cannot conclude on the

10

face of the contracts that the term "Business Opportunity" was unambiguous.[4]

V.

In dismissing Innovatus's complaint in its entirety, the district court also silently terminated additional causes of action that had nothing to do with the Non-Circumvention Provision. Specifically, Innovatus alleges in its complaint that Defendants in that action breached the Non-Disclosure Provision of the NDA by "using, relying on and/or disclosing Confidential Information" created by the parties during their brief courtship, and seeks both monetary damages and injunctive relief as a remedy. App'x at 26. There is no reason to think that the existence of the Harrington Patent obviated the parties' clear interest in preventing the disclosure of confidential information, including materials prepared by Innovatus and turned over to Appellees during the course of their joint venture. And while the district court cryptically ordered that MV Realty "may not utilize or disclose material or techniques not otherwise in general use, proprietary to Innovatus, and furnished by it to MV in confidence," *Innovatus Capital Partners*, 2018 WL 6332901, at *1, it nevertheless entered judgment dismissing all of

___

[4] We also note – without offering any opinion on the issue – that the NDAs may ultimately require independent constructions, given that they were executed on different dates by different parties. *See, e.g. Fundamental Long Term Care Holdings. LLC v. Cammeby's Funding LLC*, 20 N.Y.3d 438, 445 (2013).

11

Innovatus's claims, notwithstanding the fact that Innovatus also sought damages for past breaches of the Non-Disclosure Provisions. Clearly, this was error, and Innovatus must be permitted to pursue its claims for damages concerning Appellee's alleged misuse of confidential materials created or provided by Innovatus in the course of the joint venture.

VI.

Accordingly, we **REVERSE** the judgment of the district court and **REMAND** for proceedings consistent with this order.

FOR THE COURT:<br>
Catherine O'Hagan Wolfe, Clerk of Court