09-1247-cv
Ellis v. Solomon & Solomon, P.C.

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term, 2009

(Argued: November 20, 2009                    Decided: January 13, 2010)

Docket No. 09-1247-cv

JANET ELLIS,

    *Plaintiff-Appellee*,

    v.

SOLOMON AND SOLOMON, P.C., JULIE S. FARINA, AND DOUGLAS FISHER

    *Defendants-Appellants.*

Before: CABRANES and SACK, *Circuit Judges*, and CROTTY, *District Judge*.[*]

Defendants-appellants Solomon and Solomon, P.C., Julie S. Farina and Douglas Fisher

appeal from an order of the United States District Court for the District of Connecticut (Janet

Bond Arterton, *Judge*) granting plaintiff-appellee Janet Ellis summary judgment on her claim

under the Fair Debt Collection Practices Act ("FDCPA"). The District Court concluded that

defendants-appellants violated the FDCPA by personally serving Ellis with a summons and

complaint during the FDCPA thirty-day validation period, without explaining that

commencement of the lawsuit did not affect the rights set forth in the validation notice. We

---

[*] The Honorable Paul A. Crotty, of the United States District Court for the Southern District of New York, sitting by designation.

1

agree, and hold that service of process during the validation period must, at a minimum, be preceded or accompanied by notice to the consumer clarifying that the lawsuit does not in any way alter the information contained in the validation notice.

AFFIRMED.

JONATHAN ELLIOT, Zeldes, Needle & Cooper, P.C., *for Defendants-Appellants*.

JOANNE S. FAULKNER, New Haven, Connecticut, *for Plaintiff-Appellee*.

Thomas R. Dominczk, Maurice & Needleman, P.C., (Donald Maurice, Jr., Maurice & Needleman, P.C., Tomio B. Narta, Simmonds & Narita LLP, Eric M. Berman, Eric M. Berman, P.C., *on the brief*), *for Amicus Curiae* The National Association of Retail Collection Attorneys, *in support of Defendants-Appellants*.

PAUL A. CROTTY, *District Judge*:

Defendants-appellants, the law firm Solomon and Solomon, P.C. ("Solomon"), and two of its attorneys, Julie S. Farina ("Farina") and Douglas Fisher ("Fisher") (collectively "the defendants"), appeal from a decision and judgment of the United States District Court for the District of Connecticut (Janet Bond Arterton, *Judge*) granting summary judgment to plaintiff-appellee Janet Ellis ("Ellis") on her claim under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA" or "the Act").

Within five days of a debt collector's initial communication with a debtor (referred to in the Act as a "consumer"), the debt collector must send the consumer a written "validation notice" setting forth, among other things, the consumer's right to dispute the debt. See 15 U.S.C. §

2

1692g(a).  The consumer has thirty days from receipt of the validation notice to send the debt

collector a notification disputing the debt.  See § 1692g(a), (b).  Unless the consumer disputes the

debt, the debt collector is generally free to continue its collection activities and to communicate

with the consumer during the thirty-day "validation period."  See § 1692g(b); Jacobson v.

Healthcare Fin. Servs., Inc., 516 F.3d 85, 89 (2d Cir. 2008).  Collection activities and

communications by the debt collector during the validation period must not, however,

overshadow or be inconsistent with the disclosures the Act requires be provided in the validation

notice.  See § 1692g(b); Russell v. Equifax A.R.S., 74 F.3d 30, 35 (2d Cir. 1996).

After sending a validation notice, and during the validation period, the defendants caused

a Connecticut State Marshall to serve Ellis with a summons and complaint.  The defendants

failed to inform Ellis that commencement of the lawsuit had no effect on the information

contained in the validation notice.  The District Court found that the service of the summons and

the compliant overshadowed the validation notice in violation of the FDCPA.  The defendants

argue that under the controlling "least sophisticated consumer" standard, service of the summons

and complaint did not overshadow the disclosures made in the validation notice.  We disagree,

and for the reasons that follow, we affirm the District Court.

**Background**

The material facts are not in dispute.  Ellis owed $17,809.13 on her Citibank (South

Dakota), N.A. ("Citibank") credit card.  Wishing to collect, in May, 2005, Citibank referred

Ellis' account to Solomon "with authorization to sue."  On May 13, 2005, Solomon mailed a

letter to Ellis at her home in Greenwich, Connecticut.  After setting forth the amount claimed to

be owed by Ellis to Citibank, the letter states:

3

The above named creditor has referred this account to our office for collection with a notation that all communications cease and desist. Under Federal Law, however, we must provide you with certain disclosures.

This is an attempt to collect a debt. Any information obtained will be used for that purpose. This communication is from a debt collector. Calls are randomly monitored to ensure quality service.

VALIDATION NOTICE

Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of the debt, or any portion thereof, the debt will be assumed valid by this office. If you notify this office in writing within the thirty (30) day period that the debt, or any portion thereof is disputed, this office will obtain verification of the debt or a copy of a judgment against you and a copy of such verification will be mailed to you by this office. Upon your written request within the thirty (30) day period, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Ellis acknowledges that she received the letter and that she never disputed the debt.

Shortly after the letter was sent, Ellis' file was given to Farina for review. Farina decided to take legal action and had another Solomon attorney prepare a summons and complaint to be filed on Citibank's behalf in a collection action against Ellis in Connecticut Superior Court. The complaint, which Farina signed, claims that Ellis failed to make payments on credit extended by Citibank and demands $17,809.13 in damages in addition to costs and disbursements. Both Farina and Fisher signed the summons, which has a return date of July 19, 2005. Under the heading, "NOTICE TO EACH DEFENDANT," the summons states, in bold and in capital letters: "YOU ARE BEING SUED." The summons also states that "[t]o respond to this Summons, or to be informed of further proceedings, you or your attorney must file a form called an 'Appearance' with the Clerk of the above-named Court at the above Court address on or before the second day after the return date." Defendants who believe that they have insurance coverage for the claim asserted in the complaint are advised to "immediately take the Summons

4

and Complaint to your insurance representative." Defendants with questions about the summons are directed to "consult an attorney promptly."

Ellis was personally served with the summons and complaint by a Connecticut State Marshall at her home on May 31, 2005, when there were two more weeks to run on the validation period. On June 13, 2005, the summons and complaint were filed in Connecticut Superior Court. The defendants never said anything to Ellis regarding the effect of the lawsuit on the information conveyed in the May 13, 2005 letter.

On October 20, 2005, Ellis filed suit against the defendants under the FDCPA, and on April 3, 2008, Ellis amended the complaint. The amended complaint asserts that the defendants violated numerous provisions of the FDCPA, including §§ 1692c-1692g, in the course of their efforts to collect the debt allegedly owed by Ellis to Citibank. As relief, Ellis sought damages and equitable relief, in addition to attorneys' fees and costs.

Ellis moved for partial summary judgment, and defendants cross-moved for summary judgment on all of the claims in the amended complaint. The District Court granted Ellis summary judgment on her claim that the defendants violated § 1692g of the FDCPA by serving her with the summons and complaint during the validation period, holding that,

> in a case such as this, where Plaintiff is served with a summons and complaint in a collection action against her by a debt-collector within the 30-day validation period but no accompanying communication is given to the consumer assuring her that the validation period and rights remain in force and are not affected by service of the lawsuit, the earlier notice of the consumer's rights is overshadowed. Having filed suit against Ms. Ellis without any clarifying communication that her dispute right continued notwithstanding the pendency of the suit, Defendants violated the FDCPA . . . .

Ellis v. Somon & Somon, P.C., 599 F. Supp. 2d 298, 304 (D. Conn. 2009).

5

Since a single violation of the FDCPA is sufficient to impose liability, the District Court dismissed Ellis' remaining claims as moot, denied the defendants' motion for summery judgment on the § 1692g claim, and denied the remainder of the defendants' motion as moot. Ellis was awarded $1,000 in statutory damages in addition to costs and attorneys' fees. This timely appeal ensued.[1]

## Standard of Review

We review a grant of summary judgment under Rule 56 of the Federal Rules of Civil Procedure *de novo*. Molinari v. Bloomberg, 564 F.3d 587, 595 (2d Cir. 2009). The judgment will be upheld "only if the evidence, viewed in the light most favorable to the party against whom it is entered, demonstrates that there are no genuine issued of material fact and that the judgment was warranted as a matter of law." Barfield v. N. Y. City Health & Hosps. Corp., 537 F.3d 132, 140 (2d Cir. 2008) (citing Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Rubens v. Mason, 527 F.3d 252, 254 (2d Cir. 2008)).

## Discussion

Congress enacted the FDCPA to eliminate "abusive practices in the debt collection industry, and . . . to ensure that 'those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged.'" Jacobson, 516 F.3d at 89 (quoting 15 U.S.C. § 1692(e)). The Act focuses on regulating interactions between "debt collectors" and "consumers." Ellis, as a "natural person obligated or allegedly obligated to pay any debt," clearly fits the definition of "consumer," 15 U.S.C. § 1692a(3); and the parties agree that the defendants

---

[1] With the consent of the parties, the National Association of Retail Collection Attorneys has filed an amicus brief in support of the defendants.

are "debt collectors." § 1692a(6); see Heintz v. Jenkins, 514 U.S. 291, 299 (1995).

FDCPA § 1692g, "Validation of debts," was enacted to "eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." S. Rep. No. 95-382, at 4 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1659, 1699; see also Bartlett v. Heibel, 128 F.3d 497, 499 (7th Cir. 1997) ("These provisions are intended for the case in which the debt collector, being a hireling of the creditor rather than the creditor itself, may lack first-hand knowledge of the debt."). Unless set forth in the debt collector's "initial communication" with the consumer, the debt collector must send the consumer a written "validation notice" within five days of the initial communication. The validation notice must contain:

> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

§ 1692g(a).

After receiving a validation notice, the consumer has thirty days to mail a notice to the debt collector disputing the debt or requesting the name and address of the original creditor.

7

Jacobson, 516 F.3d at 95. If the consumer disputes the debt or requests the name and address of the original creditor during the thirty-day "validation period," the debt collector must "cease collection of the debt, or any disputed portion thereof" until the debt collector verifies the debt or obtains the name and address of the original creditor and "a copy of such verification . . . or name and address of the original creditor, is mailed to the consumer by the debt collector." § 1692g(b). However, the validation period "is not a 'grace period'; in the absence of a dispute notice, the debt collector is allowed to demand immediate payment and to continue collection activity." Jacobson, 516 F.3d at 89; see § 1692g(b) (as amended by the Financial Services Regulatory Relief Act of 2006, Pub. L. No.109-351, § 802(c), 120 Stat. 1966, 2006-07 (2006)). While debt collectors are largely free to continue collection activities during the validation period, this Court has long held that validation period collection activities and communications must not "overshadow" or "contradict" the validation notice. Jacobson, 516 F.3d at 90-91; McStay v. I.C. Sys., Inc., 308 F.3d 188, 190 (2d Cir. 2002); Clomon v. Jackson, 988 F.2d 1314, 1319 (2d Cir. 1993). When Congress amended the FDCPA in 2006, it adopted and codified the Court's approach. Section 1692g(b) now provides: "Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor." § 1692g(b) (as amended by the Financial Services Regulatory Relief Act of 2006, Pub. L. No.109-351, § 802(c), 120 Stat. 1966, 2006-07 (2006)); see Jacobson, 516 F.3d at 91 (noting that "Congress has now codified our approach . . . .").

Whether collection activities or communications within the validation period overshadow or are inconsistent with a validation notice is determined under the "least sophisticated

8

consumer" standard.  Greco v. Trauner, Cohen & Thomas, L.L.P, 412 F.3d 360, 363 (2d Cir. 2005).  It is an objective standard, designed to protect all consumers, "the gullible as well as the shrewd."  Jacobson, 516 F.3d at 90.  A collection activity or communication "overshadows or contradicts the validation notice 'if it would make the least sophisticated consumer uncertain as to her rights.'"  Id. (quoting Russell, 74 F.3d at 35).

The hypothetical least sophisticated consumer does not have "the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer," but is neither irrational nor a dolt.  Russell, 74 F.3d at 34.  While protecting those consumers most susceptible to abusive debt collection practices, this Court has been careful not to conflate lack of sophistication with unreasonableness.  See McStay, 308 F.3d at 190-91 ("[T]his Court has . . . made clear that 'in crafting a norm that protects the naive and the credulous the courts have carefully preserved the concept of reasonableness.'" (quoting Clomon, 988 F.2d at 1319)).  As such, "the FDCPA does not aid plaintiffs whose claims are based on 'bizarre or idiosyncratic interpretations of collection notices.'"  Jacobson, 516 F.3d at 90 (quoting Clomon, 988 F.2d at 1320).  Indeed, "some courts have held that 'even the least sophisticated consumer can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care.'"  Greco, 412 F.3d at 363 (quoting Clomon, 988 F.2d at 1318-19).

To recover damages under the FDCPA, a consumer does not need to show intentional conduct on the part of the debt collector.  The Act "is a strict liability statute, and the degree of a defendant's culpability may only be considered in computing damages."  Bentley v. Great Lakes Collection Bureau, Inc., 6 F.3d 60, 63 (2d Cir. 1993) (internal citation omitted) (citing Clomon,

9

988 F.2d at 1320; 15 U.S.C. § 1692k(b)).

In Goldman v. Cohen, 445 F.3d 152 (2d Cir. 2006), this Court held that the commencement of a lawsuit by a debt collector seeking to recover an unpaid consumer debt qualified as an "initial communication" for purposes of § 1692g(a). Since the debt collector's initial communication with the consumer was the initiation of a lawsuit, the debt collector had to send the consumer a validation notice within five days of service. The Court recognized, however, that "[i]n cases where debt collectors send debtors a validation notice either along with a summons and complaint or shortly thereafter . . . [there is a] risk that some debtors will become confused." Goldman, 445 F.3d at 157. Seeking to avoid such confusion, the Court explained that "it is imperative that a debt collector (1) 'make clear that the advice contained in the § 1692g validation notice in no way alters the debtor's rights or obligations with respect to the lawsuit' and (2) 'emphasiz[e] that courts set different deadlines for filings.'" Id. (quoting Thomas v. Law Firm of Simpson & Cybak, 392 F.3d 914, 919 (7th Cir. 2004) (en banc) rev'g 345 F.3d 696 (7th Cir. 2004)). The Court joined the Seventh Circuit,

> in exhorting debt collectors who choose to send § 1692g validation notices along with paperwork initiating legal proceedings to send debtors a notice, such as one containing the following language, that will ensure compliance with the FDCPA while only minimally disrupting the litigation process:

> > This advice pertains to your dealings with me as a debt collector. It does not affect your dealings with the court, and in particular it does not change the time at which you must answer the complaint [or other legal pleading]. The summons is a command from the court, not from me, and you must follow its instructions even if you dispute the validity or amount of the debt. The advice in this letter also does not affect my relations with the court. As a lawyer, I may file papers in the suit according to the court's rules and the judge's instructions.

10

Id. (quoting Thomas, 392 F.3d at 919-20).

While the 2006 amendments to the FDCPA superceded Goldman's holding that the institution of a lawsuit constitutes an initial communication, see § 1692g(d) (added by the Financial Services Regulatory Relief Act of 2006, Pub. L. No.109-351, § 802(a), 120 Stat. 1966, 2006 (2006)), there is still the real potential for confusion when a consumer is served with a lawsuit during the validation period.   As explained by the District Court, "[w]ithout some explanation to the consumer of the relationship between [the] suit and [the] provisions in the notice, it may well appear to the least sophisticated consumer that being taken to court trumps any other out-of-court rights she had."  Ellis, 599 F. Supp. 2d at 304.  For substantially the same reasons given by the District Court, we affirm, and hold that the validation notice is overshadowed where a debt collector serves a consumer with process initiating a lawsuit during the validation period, without clarifying that commencement of the lawsuit has no effect on the information conveyed in the validation notice.  We write principally to explain how debt collectors can avoid running afoul of § 1692g in the future.

Defendants did not have to serve Ellis during the validation period; they could have waited until the validation period expired.  It is difficult to discern what tactical advantage was gained by commencing a lawsuit when the validation period had only two weeks to run, especially since the return date on the summons was not until mid July – a full month after the validation period expired.  Of course, debt collectors may continue collection activities, including commencing litigation, during the validation period; but in doing so the debt collector must not transgress § 1692g(b)'s proscription of collections activities that "overshadow or . . . [are] inconsistent with" the validation notice.

If the debt collector chooses not to wait until the end of the validation period to commence debt collection litigation, an explanation of the lawsuit's impact – or more accurately, lack of impact – on the disclosures made in the validation notice must be provided. This explanation should be set forth in either the validation notice itself, or in a notice provided with the summons and complaint. The best practice is to provide an explanation in both the validation notice and the summons and complaint. Clarifying that commencement of a lawsuit does not trump the validation notice will come at little or no cost to debt collectors and will ensure that the consumer rights secured under the FDCPA are not overshadowed or contradicted.

## CONCLUSION

For the reasons set forth above, the judgment of the district court is AFFIRMED.